MARY J. GOUWENS, Appellant, *vs.* ROLLIN A. GOUWENS et al. Appellees.

*Opinion filed December 15, 1908—Rehearing denied Feb. 4, 1909.*

1. EXECUTIONS—*the plaintiff in execution is not bound to give sheriff directions about executing it.* Although the plaintiff in execution has the right to control the writ and give the sheriff directions about executing it, yet he is not bound to do so, and when the writ is received and no instructions are given, it is the duty of the sheriff to proceed with due diligence to execute it.

2. SAME—*failure of judgment creditor to give directions does not render execution dormant.* It is the duty of a sheriff to receive an execution tendered him, and a failure of the judgment creditor to give any directions about executing it or where property of the judgment debtor may be found does not render the writ dormant or ineffective to preserve the lien of the judgment.

3. APPEALS AND ERRORS—*weight to be given testimony of witnesses is a question for the chancellor.* Whether the testimony of the attorney for an execution plaintiff, to the effect that he gave instructions he wanted the executions obeyed, should be given greater weight than the testimony of the execution clerks in the sheriff's office, who testified that the executions were to be held, is a matter to be determined by the chancellor, and his determination will not be disturbed by a court of review unless clearly contrary to the weight of the evidence.

4. EQUITY—*when judgment creditor is not required to refund redemption money expended by grantee of a judgment debtor.* A bill by the grantee of a judgment debtor to set aside as a cloud upon her title a deed based on an execution sale under the judgment may be dismissed for want of equity without requiring the re-payment to complainant of the amount expended by her in redeeming from a foreclosure proceeding, where her title was acquired subject to the mortgage and subject to the lien of judgment.

5. SAME—*a judgment creditor is not required to refund money paid for taxes.* Equity does not require a judgment creditor to refund money expended by the judgment debtor or his grantee for taxes assessed against the debtor's land, which were paid after the judgment became a lien and before the land was seized under the execution issued on the judgment.

APPEAL from the Circuit Court of Cook county; the Hon. C. M. WALKER, Judge, presiding.

JOHN C. TRAINOR, for appellant:

A conveyance of land from husband to wife in satisfaction of a *bona fide* debt is not a voluntary conveyance and not a fraud on the husband's other creditors. *Tomlinson* v. *Matthews,* 98 Ill. 182.

A debtor, even when insolvent, may prefer one creditor to another, even though such preferred creditor be his wife, if the obligation to her is a *bona fide* indebtedness. *Bank* v. *Bank,* 168 Ill. 264.

The lien of a judgment on real estate expires at the end of a year after its rendition unless an execution is issued within the year, and the lien is not revived after the year until an execution is issued and delivered to the sheriff to execute. 2 Starr & Cur. Stat. chap. 77, par. 1, p. 2324.

An execution is not "issued," within the meaning of the statute, unless it is delivered to the sheriff to execute. *Pease* v. *Ritchie,* 132 Ill. 638; *Sweetser* v. *Matson,* 153 id. 581; *Howe* v. *Cameron,* 23 Fed. Rep. 324.

A delivery of an execution to the sheriff with instructions to do nothing under it confers no rights upon the creditor. *Gilmore* v. *Davis,* 84 Ill. 487.

The only legitimate purpose of an execution is to collect the judgment. It cannot be used as a mortgage or secret lien. *Pease* v. *Ritchie,* 132 Ill. 638.

I. T. GREENACRE, for appellees:

An execution delivered to and received by the sheriff without any instructions or directions is delivered to him to execute, because it becomes his duty to execute it according to its tenor and mandate. The writ is identical whether it is later used against real or personal property. *Kiehn* v. *Bestor,* 30 Ill. App. 458; *Koren* v. *Roemheld,* 6 id. 275; *Cold Storage Co.* v. *Rose,* 60 id. 452; *Sweetser* v. *Matson,* 153 Ill. 568; *Moses* v. *Thomas,* 29 N. J. L. 124; *Gilmore* v. *Davis,* 84 Ill. 487.

This court has repeatedly held that the delivery of an execution within a year to the sheriff preserved the lien of the execution until seven years from the time the judgment first became a lien, without discussing or mentioning anything about instructions or directions *pro* or *con* to the sheriff, and under circumstances which make it appear that delivery to the sheriff without relieving him from his duty to follow the writ was considered enough, especially where the writ was returned *nulla bona* and so appeared in the records of the court. *Riggin* v. *Mulligan,* 4 Gilm. 50; *Gay* v. *Gay,* 123 Ill. 221; *Gorham* v. *Farson,* 119 id. 425; *Turney* v. *Young,* 22 id. 253; *Lampsett* v. *Whitney,* 1 Scam. 441; *Tenney* v. *Hemenway,* 53 Ill. 97; *Breed* v. *Gorham,* 108 id. 81.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county dismissing the appellant's bill in chancery for want of equity.

The allegations of the amended bill and supplemental bill necessary to an understanding of the vital questions involved are as follows: The bill alleged that complainant was the owner in fee of seventy lots therein described, and that she acquired title to them by conveyance from her husband, John J. Gouwens. The deed to her for eleven of the lots was dated and recorded February 28, 1901, and to fifty-nine of them March 9, 1901; that on December 3, 1898, a judgment for $235.50 had been rendered in the superior court of Cook county against the complainant's husband in favor of Anton Steinbach, which will be hereafter called the Steinbach judgment, and that on November 29, 1898, a judgment for $693.16 had been rendered against said John J. Gouwens in the superior court of Cook county in favor of Rollin A. Gouwens, which will be hereafter referred to as the Gouwens judgment, both of which judg-

ments were subsequently assigned to Peter VanDrunen, one of the defendants to the bill. The bill alleged that executions were issued on each of said judgments the day they were rendered, but that the execution issued on the Steinbach judgment was delivered to the sheriff of Cook county with directions to make no levy but to hold the writ until the return day, and that it was afterwards, on March 3, 1899, returned not satisfied; that the execution issued on the Gouwens judgment was not delivered until the 16th day of June, 1899, when it was delivered to the sheriff for the sole purpose of having it returned so that an *alias* writ might be procured; that an *alias* writ was issued upon the judgment on the 17th day of June, 1899, and delivered to the sheriff, with directions to hold the same until the return day thereof and to make no levy upon property under it; that upon the 23d day of March, 1901, executions were issued on each of said judgments, and by virtue of them the lands described in the bill were levied upon by the sheriff and afterwards sold. There was no redemption from this sale and a deed was issued to the holder of the certificate of purchase by the sheriff. The bill further alleges that at the time these last mentioned executions were issued John J. Gouwens had no title or interest in the property, and that the judgments against him were not liens against said property at the time of the conveyances by him to appellant, for the reason that no executions had been issued upon said judgments within one year and delivered to the sheriff to be collected or levied upon property. The bill also alleged that after appellant acquired title to the lots in controversy she paid the taxes assessed against them each year, amounting in all to $500, and that she redeemed a portion of the lands from sale under a foreclosure proceeding in which the lots were sold to satisfy a mortgage given by her husband and herself in May, 1897, to secure a note of her husband. The bill further alleged that the levy of said executions, and the sale of property thereunder, and the deed executed by

the sheriff, were clouds upon the appellant's title, and she prayed to have them declared null and void, and that the certificate of purchase and deed from the sheriff be ordered to be delivered up to the clerk of the court to be canceled and that appellant's title to the property be confirmed.

A demurrer to the bill was overruled and the defendants thereto filed pleas in bar, which were sustained by the circuit court and a decree entered dismissing the bill. On appeal to this court it was held the pleas were not good and that the court erred in sustaining them. The decree was therefore reversed and the case remanded. (*Gouwens* v. *Gouwens,* 222 Ill. 223.) Upon the re-instatement of the cause in the circuit court issues were formed by answers and replications and the cause heard by the chancellor upon documentary evidence and the testimony of witnesses heard in open court.

We have not deemed it necessary to set out the somewhat voluminous pleadings in detail, for the reason that the question whether executions were issued upon the judgments within the meaning of the law, so that their lien was preserved beyond the period of one year from the date of their rendition, is decisive of the case. Appellant's contention is that no execution was issued upon either judgment within one year from their rendition, within the meaning of the law; that the executions issued were not delivered to the sheriff to be executed, but were delivered to him with instructions to not execute but hold them until their return day and then return them, and that this could not have the effect of preserving the liens of the judgments beyond one year, but was the same as if no executions had been issued within the year. If this position is correct it would follow that the judgments were not liens upon the property involved when the conveyances were made to appellant, February 28 and March 9, 1901. Appellees deny that when the executions issued December 3, 1898, and June 17, 1899, were delivered to the sheriff, instructions were given not to

execute them but to hold them until their return day, and insist they were delivered to be executed and the sheriff was so instructed at the time.

All the executions issued on both· judgments, except the *alias* issued June 17, 1899, on the Gouwens judgment, were delivered by the attorney or agent of plaintiff in execution to C. L. Harper, execution clerk in the sheriff's office, who noted thereon the time of the receipt, the fees paid, and filed the writ and entered it in the execution docket. The *alias* execution on the Gouwens judgment was delivered to Mr. Gneuwich, Mr. Harper's assistant, while the latter was absent at lunch. A fee of seventy-five cents was paid the sheriff by plaintiff in execution when the first execution issued on the Steinbach judgment and the *alias* writ issued on the Gouwens judgment were delivered to him. These executions were both returned at their expiration, endorsed: "The within named defendant not found and no property of the within named defendant found in my county on which to levy this writ, I therefore return the same no property found and no part satisfied." A fee of ten cents was paid the sheriff when the execution issued November 29, 1898, was delivered to him, June 16, 1899. As this writ had expired before it was received by the sheriff it was returned by him endorsed, "Received too late for service." Harper testified he was execution clerk in the sheriff's office in 1898 and 1899, and had been for sixteen or eighteen years previous; that when the execution issued on the Steinbach judgment December 3, 1898, and the *alias* execution issued on the Gouwens judgment June 17, 1899, were delivered and the fee paid, no instructions were given to make a demand for or levy upon property; that when the party who delivered the execution issued on the Steinbach judgment was asked if he wanted a levy made he said no, and the execution was simply filed in the sheriff's office and permitted to remain there till it expired. The witness testified that from December, 1898, to December, 1899, five thousand execu-

tions were received in the sheriff's office, all of which passed through his hands except such as came in while he was absent at lunch. He stated he had an independent recollection, in every instance, of a writ being received, and of what was said and done, but it is apparent from his whole evidence that his testimony was based more upon what he testified was the custom of the office and the instructions given him by the sheriff than upon his independent recollection of the particular instance. It was, according to his testimony, customary to ask the person who delivered an execution whether a levy was to be made, and if it was, this determined the fee to be collected in advance. The fee allowed by law for receiving and filing an execution and allowing it to expire without any effort to serve it or levy upon property and then returning it could not have exceeded twenty cents, but the witness testified his instructions from the sheriff were to collect seventy-five cents on all executions delivered, and if no action was taken under the writ, in a great many instances the fee, and in some cases all of it but ten cents, was refunded when the execution was returned, but if a demand for property was to be made a fee of $1.25 was collected. Harper was not present when the *alias* execution on the Gouwens judgment was delivered to Gneuwich, his assistant, but he testified he gave his assistant the same instructions the sheriff had given him. The witness stated that the fee being endorsed on the writs as collected was one reason why he reached the conclusion that no levy was desired under them, and that he supposed it was principally because of his custom to ask every person who delivered an execution what he wanted done with it, and collected a fee accordingly, that he could tell what they said. Gneuwich testified that when executions were delivered to him he would ask the person delivering them whether a demand for or a levy on property was to be made and that the fee collected was determined by the instructions given. He testified the only instructions given him

when the execution issued on the Gouwens judgment was delivered was to file it; that no description of property to be levied on was given him, and that if it had been, the fee would have been $2.50. He further testified that he had no independent recollection of what was said and done at the time the writ was delivered, but his testimony was based upon the custom of the office, his instructions from his superior and the endorsements made on the writ. Frederic R. DeYoung, on behalf of appellees, testified that he delivered the execution issued December 3, 1898, on the Steinbach judgment, to Mr. Harper on the day it was issued, and the one issued June 17, 1899, on the Gouwens judgment, to Gneuwich on the day that it was issued; that he was attorney for the plaintiff in execution in the Steinbach case, and that he delivered the execution in the Gouwens case to Gneuwich for Mr. Greenacre, attorney for the plaintiff in execution, in whose office he had formerly been. DeYoung was originally one of the solicitors for appellees in this case, but withdrew from it by leave of court when the demurrer to the bill was overruled. He testified that when he delivered the writs to Harper and Gneuwich he paid the fee of seventy-five cents in each case, and in reply to an inquiry as to what should be done with the writs, said he wanted them obeyed, or words to that effect,—he could not recall the exact language; that at the time the writs were delivered his information was that the judgment debtor was traveling in Iowa, and he did not give the sheriff his address or any description of property to be levied on.

If the contention of appellant be conceded to be correct, that an execution issued and delivered to the sheriff with instructions not to execute the same is no more effective to preserve the lien of the judgment beyond one year from its rendition than if no execution had been issued within that time, we nevertheless think this case must be determined against appellant upon the ground that the proof in this record fails to show that instructions were given the sheriff,

237 — 33

when the writs were delivered, not to execute them. It is true, no instructions were given the sheriff, when these executions were delivered, about levying them on any particular property, but we understand the law to be, that while the plaintiff in execution has the right to control it and give the sheriff directions about executing it, still he is not bound to do so. When the writ is received and no instructions are given, it is the duty of the officer to proceed with due diligence to execute it. "No doubt a prudent plaintiff would, on delivering the writ to the officer, take pains to inform him where property subject to the writ could be found and would at all times co-operate with the officers in their attempts to execute the writ. The plaintiff who pursues this course places the officer in such a position that his failure to at once proceed to levy gives rise to a presumption of negligence. But plaintiff is not bound to pursue this course. He need only place the writ in the officer's hands for service. The officer must then make reasonable search and inquiry." (Freeman on Executions,—2d ed.—sec. 252.) The same principle is announced in *Gilmore* v. *Davis,* 84 Ill. 487, where it is said (p. 489): "We believe the doctrine to be, as the object of an execution is to obtain satisfaction of the judgment on which it issues, on its delivery to the proper officer it gives to the creditor a priority, because the law imposes the duty upon the officer to execute it without delay."

It is the duty of a sheriff to receive an execution when tendered him, and the failure of a judgment creditor to give instructions about executing it is not sufficient to render the writ dormant or ineffective to preserve the lien of the judgment. In this case, if any instructions were given when the writs were delivered, they were given in answer to inquiries by the execution clerks as to what it was desired should be done with them. Harper and Gneuwich testified they were told not to execute the writs, and while Harper testified he had an independent recollection of each

transaction when writs were delivered to him, the fact that these transactions occurred in large numbers every day, and the further fact that his whole testimony, taken together, shows that he was testifying more from what he said his instructions were and the custom of the office than from any independent recollection of the transaction, was a proper matter to be considered by the chancellor in determining the weight to be given to his testimony. The same is also true of the testimony of Gneuwich, who did not claim to have any independent recollection of the transaction but based his testimony on instructions given him and the custom of the office in such matters. DeYoung testified that he remembered delivering the writs issued December 3, 1898, on the Steinbach judgment and June 17, 1899, on the Gouwens judgment and what was said at the time. He does not pretend to remember the exact language, but says the substance of it was, that when asked what should be done with the writs he told the officers to execute them. He gives some reasons which he claimed aided him in remembering the transaction. Whether his testimony should be given greater weight, under all the circumstances, than that of Harper and Gneuwich was a proper question for determination by the chancellor, who saw and heard the witnesses testify. In such cases the rule is that the finding of the chancellor will not be disturbed unless it is clearly contrary to the weight of the evidence, and we cannot say that the decree in this respect was not justified by the testimony.

The proof showed that after appellant acquired the conveyances to the property she redeemed a portion of the lots from a sale made under a foreclosure proceeding to foreclose a mortgage given by her husband and herself May 12, 1897, paying $721.54 to make said redemption. After the conveyance to appellant by her husband she also paid taxes, or at least a portion of them, assessed against the lots, and it is contended that the decree is contrary to equity in not requiring appellees to pay to appellant the amount of

money expended by her in the payment of taxes and redemption of the lots from the foreclosure proceeding. We do not think this contention sound. Appellant received her title subject to the liens of the mortgage and the existing judgments, of which she was bound to take notice. If she chose voluntarily to remove an encumbrance that had priority over the judgment liens she would be placed in no better position than her husband would have been if he had discharged the lien. Equity does not require a judgment creditor to re-pay a judgment debtor taxes assessed against the debtor's land and paid by him after the judgment becomes a lien and before the land is seized under the execution.

We are of opinion the decree of the circuit court was right, and it is affirmed.                    *Decree affirmed.*